**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TAMEKA MULLEN                                  CASE NO. 18-13828

     *Plaintiff,*

*v.*                                                                HON. PAUL D. BORMAN
                                 DISTRICT JUDGE

COMMISSIONER OF SOCIAL                 HON. PATRICIA T. MORRIS
SECURITY,                                             MAGISTRATE JUDGE

     *Defendant.*

_____/

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS**</u>
<u>**MOTIONS FOR SUMMARY JUDGMENT (ECF No. 13, 15)**</u>

## I.     <u>RECOMMENDATION</u>

Plaintiff Tameka Mullen challenges Defendant Commissioner of Social Security's

final decision denying her claims for Title II Disability Insurance Benefits (DIB) and Title

XVI Supplemental Security Income (SSI) benefits. The case was referred to me for review.

(ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons

below, I conclude that substantial evidence supports the Commissioner's decision.

Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF

No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 15), and **AFFIRMING** the

Commissioner's final decision.

## II.    <u>REPORT</u>

### A.     **Introduction and Procedural History**

Plaintiff's application for DIB was filed on July 20, 2016, (ECF No. 11, PgID.248),

and SSI on August 29, 2016. (*Id.*, PgID.250.) For purposes of DIB, she initially alleged she

1

became disabled on August 8, 2014. (*Id.*, PgID.248.) For purposes of SSI, her initial alleged disability onset date was January 21, 2016. (*Id.*, PgID.250.) She subsequently amended her alleged onset date to January 1, 2017. (*Id.*, PgID.49, 268.) The Commissioner denied the claims. (*Id.*, PgID.133–4.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred April 24, 2018. (*Id.*, PgID.60–85, 199.) The ALJ issued a decision on June 7, 2018, finding that Plaintiff was not disabled. (*Id.*, PgID.46–56.) The Appeals Council denied review on December 3, 2018. (*Id.*, PgID.30.) Plaintiff sought judicial review on December 11, 2018. (ECF No. 1.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF No. 13, 15, 16.)

### B.   Standard of Review

The court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker*

*v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286. (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

3

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    2018 ALJ Findings[1]

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 11, PgID.56.) At Step One, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2021. (*Id.*, PgID.48.) The ALJ also found that Plaintiff had engaged in substantial gainful activity from 2015 through 2016. (*Id.*, PgID.49.) However, the ALJ continued, that there was a 12-month period where the Plaintiff did not engage in substantial gainful activity. (*Id.*) At step two, the ALJ determined that Plaintiff had the following severe impairments: status-post lumbar laminectomy and lumbar fusion and L5-S1 nerve root irritation. (*Id.*, PgID.49.)[2] The ALJ also found that Plaintiff had the following non-severe impairments: asthma, carpal tunnel syndrome, and fibromyalgia. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*, PgID.50–1.)

At step four, the ALJ found that Plaintiff had the RFC to perform

> sedentary work as defined as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ladders/ropes/scaffolds, climb ramps or stairs, balance, stop, crouch, kneel, and crawl. The claimant should avoid concentrated exposure to excessive vibration and unprotected heights. She is further limited to simple, routine, and repetitive tasks.

(*Id.*, PgID.51.) (footnotes omitted).[3] The ALJ also concluded that Plaintiff could not

---

[1] These findings are largely the same as the findings in Plaintiff's 2014 disability case. That case was for DIB and SSI benefits. An ALJ rendered a decision denying benefits in that case on January 25, 2016. (ECF No. 11, PageID.118–129).

[2] The 2016 ALJ decision found the same severe impairments. (*Id.*, PageID.122.)

[3] The 2016 ALJ decision also found the same RFC. (*Id.*, PageID.123.)

perform any past relevant work. (*Id.*, PgID.54.) Finally, at step five, the ALJ noted various jobs existing in significant numbers nationally that Plaintiff could perform. (*Id.*, PgID.55–6.) These jobs include information clerk, general office clerk, and hand packer. (*Id.*). Finally, the ALJ found that Plaintiff was not under a disability from August 8, 2014 through the date of the decision. (*Id.*, PgID.56.)

### E.   Administrative Record

#### 1.   Overview of Medical Evidence

Plaintiff's medical records indicate that she experienced back pain for years.  (*Id.*, PgID.363. *See also Id.*, PgID.414, 417, 421.) Plaintiff has had the following surgeries: lumbar disc surgery in 2011; lumbar fusion in 2012 and 2013; laminectomy. (see *Id.*, PgID.363, 437, 446.)[4]

##### a.   Reports of Pain Level and Activities of Daily Living (ADLs)

The medical record in this case reveals a number of Plaintiff's appointments with NeuroPain Consultants; these appointments appear to occur on about a monthly basis. The records of these appointments include histories of present illness, which include self-reports of the quality/severity/duration of pain, and any issues with activities of daily living. The record is as follows:

---

[4] It appears from this record that, generally, the medical records appear to be dated after the 2015 ALJ hearing. References to medical events that are directly relevant to the last claim for DIB/SSI benefits appear in these medical records by reference only (e.g. the medical record cites the occurrence of a surgery, and not a record of the surgery itself).

- <u>January 8, 2016</u>. Plaintiff reported an average pain at 10/10, with lowest pain at 6/10. Pain is constant but variable in intensity. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.422).

- <u>February 4, 2016</u>. Plaintiff reported an average pain at 10/10, with lowest pain at 6/10. Pain is constant. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.418.)

- <u>March 3, 2016</u>. Plaintiff reports constant pain. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.415.)

- <u>March 31, 2016</u>. Plaintiff reported an average pain at 8/10, with lowest pain at 6/10. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.411.)

- <u>April 28, 2016</u>. Plaintiff reported an average pain at 9/10, with lowest pain at 6/10. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.408.)

- <u>May 26, 2016</u>. Plaintiff reported an average pain at 8/10, with the lowest pain at 6/10. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.406.)

- June 23, 2016. Plaintiff reported an average pain at 10/10, with the lowest pain at 2/10. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.401.)

- July 21, 2016. Plaintiff reported an average pain at 10/10, with the lowest pain at 6/10. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.397.)

- August 18, 2016. Plaintiff reported an average pain at 10/10, with the lowest pain at 6/10. Plaintiff required no assistance with bathing, cooking, dressing, driving, housekeeping, toileting, shopping, or yardwork. (*Id.*, PgID.394.)

- September 15, 2016. Plaintiff reported an average pain at 10/10, with the lowest pain at 5/10. Plaintiff required maximal assistance with cooking and housekeeping; moderate assistance with bathing, dressing, and driving; dependent on others for shopping; and no assistance needed for toileting or yardwork. (*Id.*, PgID.390.)

- March 2, 2017. Plaintiff reported an average pain at 10/10, with the lowest pain at 6/10. Plaintiff required maximal assistance with shopping; moderate assistance with cooking and housekeeping; minimal assistance with bathing, dressing, driving, and toileting; and no assistance needed for yardwork. (*Id.*, PgID.502.)

- April 3, 2017. Plaintiff reported an average pain at 8/10, with the lowest pain at 6/10. Plaintiff required maximal assistance with housekeeping and shopping;

moderate assistance with cooking, dressing, driving, and toileting; minimal assistance with bathing, and no assistance with yardwork. (*Id.*, PgID.496.)

- <u>May 1, 2017</u>. Plaintiff reported an average pain at 9/10, with the lowest pain at 7/10. Plaintiff required moderate assistance with cooking, housekeeping, and shopping; minimal assistance with bathing and dressing; supervision with toileting; and no assistance with yardwork. (*Id.*, PgID.489–490.)

- <u>May 30, 2017</u>. Plaintiff reported an average pain at 8/10, with the lowest pain at 5/10. Plaintiff required moderate assistance with bathing, cooking, dressing, driving, housekeeping, toileting, and shopping; no assistance with yardwork. (*Id.*, PgID.483–484.)

- <u>June 27, 2017</u>. Plaintiff reported an average pain at 9/10, with the lowest pain at 6/10. Plaintiff required moderate assistance with housekeeping and shopping; and minimal assistance with driving. (*Id.*, PgID.477.)

- <u>August 22, 2017</u>. Plaintiff reported an average pain at 10/10, with the lowest at 4/10. Plaintiff required moderate assistance with bathing, cooking, dressing, housekeeping, and shopping; minimal assistance with driving and toileting; and no assistance with toileting and yardwork.[5] (*Id.*, PgID.471–2.)

- <u>November 13, 2017</u>. Plaintiff reported an average pain at 10/10, with the lowest at 4/10. Plaintiff required moderate assistance with bathing, dressing, housekeeping, and shopping. (*Id.*, PgID.465–6.)

---

[5] Toileting is, in fact, provides the two responses in the record.

- <u>January 8, 2018</u>. Plaintiff reported an average pain at 10/10, with the lowest at 6/10. Plaintiff required maximal assistance with housekeeping and shopping. (*Id.*, PgID.460.)

- <u>March 5, 2018</u>. Plaintiff reported present pain at 8/10, and pain without medication is 10/10. Plaintiff indicated needing assistance with ADLs. (*Id.*, PgID.455.)

With these appointments cited, Plaintiff also generally indicated on medication review that her prescribed medication has assisted in reducing pain, and she is able to do more activities, such as sleep or walk longer. (*See, e.g.*, *id.*, PgID.466, 472; *but see id.*, PgID.460.)

### b. Neurological and Musculoskeltal Exams

Throughout the appointments listed above, the examining doctor or nurse practitioner reported Plaintiff had an antalgic gait and/or a forward flexed body posture. (*See, e.g.*, *id.*, PgID.468, 474, 480.) Through the same appointments, examination revealed that sensation to light touch and pinprick are intact throughout.[6] (*Id.*) Plaintiff's musculoskeletal examinations were as follows:

- <u>January 8, 2016</u>. Range of motion for lumbar spine was within normal limits, except for flexion which is limited to 30 degrees with pain. (*Id.*, PgID.423.) Straight leg raising seated was positive on the left side. (*Id.*) Good bilateral plantar flexion and dorsiflexion. (*Id.*)

---

[6] Three appointments in 2016 indicated L5 numbness.

- <u>February 4, 2016</u>. Straight leg raising seated was positive on left side at 15 degrees. (*Id.*, PgID.420.) Good bilateral plantar flexion and dorsiflexion. (*Id.*)

- <u>March 3, 2016</u>. Range of motion for cervical spine was within normal limits, except extension and right and left rotation were limited with pain. (*Id.*, PgID.416.) Bilateral strength was rated 5/5 for both upper extremities, but finger grip was rated 4/5 bilaterally. (*Id.*) Range of motion for lumbar spine was within normal limits except for flexion which is limited to 35 degrees with pain. (*Id.*) Straight leg raising seated positive on left side. (*Id.*) Good bilateral plantar flexion and dorsiflexion. (*Id.*)

- <u>March 31, 2016</u>. Bilateral strength was rated 5/5 for both upper extremities, but finger grip was rated 3.5 left. (*Id.*, PgID.413.) Straight leg raising seated positive on left side. (*Id.*) Good bilateral plantar flexion and dorsiflexion bilaterally, except left dorsiflexion at 4/5. (*Id.*)

- <u>April 28, 2016</u>. Pain on cervical facet loading. (*Id.*, PgID.409.) Motor intact on bilateral upper extremities. (*Id.*) Good plantar flexion and dorsiflexion. (*Id.*) Straight leg raising seated positive on both sides. (*Id.*)

- <u>May 26, 2016</u>. Pain on cervical facet loading. (*Id.*, PgID.406.) Motor intact on bilateral upper extremities and stable. (*Id.*) Facet lumbar painful. (*Id.*) Straight leg raising seated positive on both sides at 30 degrees. (*Id.*) Good plantar flexion and dorsiflexion. (*Id.*)

- <u>June 23, 2016</u>. Range of motion within normal limits, except flexion and right and left rotation which are limited with pain. (*Id.*, PgID.402.) Facet loading positive left. (*Id.*) Bilateral upper extremities rated 5/5 strength, except for 4/5 finger grip bilaterally. (*Id.*)

- <u>July 21, 2016</u>. Range of motion for cervical spine within normal limits, except left and right rotations are limited to with pain. (*Id.*, PgID.399.) Strength rated at 5/5 for bilateral upper extremities, except 4/5 finger grip bilaterally. (*Id.*) Spurling sign was positive on this date. (*Id.*)

- <u>August 18, 2016</u>. Range of motion for cervical spine within normal limits, except left and right rotations are limited to with pain. (*Id.*, PgID.395.) Facet loading positive on right. (*Id.*) Bilateral upper extremities rated at 4/5 strength. (*Id.*) Straight leg seated positive on left side. (*Id.*) Good plantar flexion and dorsiflexion. (*Id.*)

- <u>September 15, 2016</u>. Straight leg raising seated positive on left side. (*Id.*, PgID.392.) Good plantar flexion and dorsiflexion. (*Id.*)

- <u>March 2, 2017</u>. Bilateral upper extremities rated at 4/5 strength. (*Id.*, PgID.504.) Straight leg raising seated positive on left side. (*Id.*)

- <u>April 3, 2017</u>. Bilateral upper extremities rated at 4/5 strength. (*Id.*, PgID.499.) Straight leg raising seated positive on left side. (*Id.*) Good plantar flexion and dorsiflexion. (*Id.*)

- <u>May 1, 2017</u>. Cervical spine within normal limits except flexion, right and left rotation are all limited with pain. (*Id.*, PgID.492) Bilateral upper extremities rated at 4/5 strength. (*Id.*) Facet loading positive bilaterally. (*Id.*) Straight leg raising seated positive on left side. (*Id.*) Good plantar flexion and dorsiflexion. (*Id.*)

- <u>May 30, 2017</u>. Cervical spine within normal limits except for right and left rotations which are limited with pain. (*Id.*, PgID.486.) Bilateral upper extremities are rated at 4/5 strength. (*Id.*) Facet loading positive left. (*Id.*) Lumbar spine within normal limits except flexion which is limited to 45 degrees with pain. (*Id.*) Bilateral lower extremities strength is 4/5. (*Id.*) Straight leg raising seated positive on left side. (*Id.*) Good plantar flexion and dorsiflexion. (*Id.*)

- <u>June 27, 2017</u>. Bilateral lower extremities strength is 4/5. (*Id.*, PgID.480.) Straight leg raising seated positive on left side. (*Id.*)

- <u>August 22, 2017</u>. Bilateral lower extremities strength is 4/5. (*Id.*, PgID.474.). Straight leg raising seated positive on both sides. (*Id.*)

- <u>November 13, 2017</u>. Range of motion for lumbar spine within normal limits, except extension is limited to 10 degrees with pain. (*Id.*, PgID.468.) Straight leg raising seated positive on left side. (*Id.*)

- <u>March 3, 2018</u>. Range of motion for lumbar spine within normal limits except for extension, which is limited to 5 degrees with pain. (*Id.*, PgID.458.) Straight leg raising seated positive on left side at 15 degrees. (*Id.*)

### c.    MRIs

Plaintiff had an MRI performed at an appointment ordered by Dr. Marc Wittenberg on March 8, 2016. (*Id.*, PgID.364.) The reason for the examination was about Plaintiff's back pain, neck pain, and numbness or weakness in arms and hands. (*Id.*) The record notes that there is a comparison to a January 4, 2012 MRI. (*Id.*) Following the examination, the following findings were reported:

> The cervical spinal cord morphologically intact. No cord compression, cavitation or syrinx. No measure listhesis or fragmentation. No enhancing intra- or extra medullary mass. No abnormal enhancement in the disc space or in the vertebral bodies. No epidural collection. Minimal disc spaces narrowing and degenerative endplates. . . . Minimal degenerative change in the cervical spine detailed above. No distinct herniation or central canal stenosis. No distinct site of tight canal blockage. . . .

(*Id.*, PgID.364–65.) (emphasis in original removed, quotation format condensed). About three months later, on June 4, 2016, Plaintiff has another MRI performed, as ordered by Dr. Wittenberg. (*Id.*, PgID.363.) This record notes a comparison to an MRI of the lumbar spine on October 27, 2015. (*Id.*) Following this examination, the following findings were reported:

> There are susceptibility artifacts from posterolateral fusion hardware and an intervertebral disc implant in place at L5-S1. There is mild levoconvex scoliosis of the lumbar spine. The lumbar vertebral bodies maintain normal heights, alignment and marrow signal with no compression fractures or subluxations seen. . . . As on the previous MRI examination, there is no lumbar disc herniation, spinal canal stenosis or neural foraminal narrowing. However, evaluation of the neural foramina at L4-5 and L5-S1, particularly

14

on the left side, is limited by susceptibility artifacts from fusion hardware. . . .
No significant change since prior MRI examination of 10/27/2015.

(*Id.*)

### d.   State Agency Doctor

The state agency doctor, Shanthini Daniel, reviewed the medical evidence of this

case, as November 23, 2016. (*Id.*, PgId.135, 147.) Dr. Daniel determined that Plaintiff was

not disabled (*Id.*, PgID.145, 157.) Dr. Daniel considered that Plaintiff's medically

determined impairments could produce the Plaintiff's pain or other symptoms. (*Id.*,

PgID.141, 153.) However, Dr. Daniel considered Plaintiff's statements only partially

consistent with the medical and non-medical evidence on file. (*Id.*) The Doctor explained

that

> The [Plaintiff's] [medically determined impairments] could reasonably be
> expected to produce the alleged symptoms, but the intensity of the symptoms
> and their impact on functioning are not consistent with the totality of
> evidence. For example, in her ADLs she states that she is in constant pain
> and that the stress causes pain that keeps her from doing most things but later
> on in the ADLs, she is able to do 6 hours of yard and house work and walk
> 1/4 miles before needing a break w/o any aides. Thusly I find her statements
> to be partially consistent.

(*Id.*, PgID.142.) Dr. Daniel also assessed Plaintiff's residual functioning capacity, rating

her limits of occasionally or frequently lifting or carrying items of up to 10 lbs; to stand for

a total of 2 hours, and to sit for a total of 6 hours in a workday. (*Id.*) Plaintiff has occasional

postural limitations. (*Id.*, PgID.142–3) Plaintiff should avoid concentrated exposure to

vibration and hazards. (*Id.*, PgID.143) Finally, Dr. Daniel additionally explained that

> [Plaintiff] is found to retain the ability to perform sedentary work as indicated
> above. She is further limited to simple, routine, and repetitive tasks based on
> sleepiness . . . associated w/ narcotic pain medication. This is adopted from

the ALJ dated 1/25/16. There is no significant change since this decision, and
it is adopted in full.

(*Id.*, PgID.143.)

### e.   Other

Plaintiff underwent an EMG on August 31, 2016, before Dr. Hysni. (*Id.*, PgID.358–

60.) From this EMG, the impression was that "This is an abnormal EMG/NCS of the both

upper extremities. There is electrodiagnostic evidence of a bilateral mild median

mononeuropathies at both wrist (Mild Bilateral Carpal Tunnel Syndrome) without

denervation noted. There is no electrodiagnostic evidence of a cervical radiculopathy or

other focal or peripheral polyneuropathy." (*Id.*, PgID.359.)

Plaintiff underwent a procedure in January 2017 and February 2017 for an SI joint

injection on the left side under stereotactic fluoroscopic guidance. (*Id.*, PgID.511, 508.)

This was the first procedure of this type, and Plaintiff reported that overall pain relief was

good, reducing pain by about 60%. (*Id.*, PgID.508.) However, the pain came back after a

few days. (*Id.*)

Plaintiff had an appointment with Dr. Mansour on April 20, 2017. (*Id.*, PgID.441.)

This appointment included a comprehensive physical exam, where Plaintiff's complaint

included pain. (*Id.*) Plaintiff reported issues of chronic back pain, problems with sleep

patterns, fatigue. (*Id.*) These pain issues were further described as:

> The onset of [back] pain is chronic. She has been experiencing pain for
> years. . . . The pain is moderate (4–7) in intensity. The pain is constant. She
> feels that the pain is deep. . . . She experiences no change in the condition
> since the onset. The patient denies any history of prior similar pain. She
> denies trauma at onset of pain. There are no alleviating factors. There are no
> aggravating factors.

16

(*Id.*)

Plaintiff had an appointment with Dr. Mohammedi Savliwala on October 4, 2017. (*Id.*, PgID.430.) A physical examination at this appointment revealed "no evidence of bony tenderness, joint effusion, enlargement or abnormal motion. No muscle fasciculations, atrophy, muscle weakness, asymmetry or reduced range of motion noted. . . . Alert and oriented X 3. . . . Strength 5/5 in all muscle groups. Gait normal without ataxia." (*Id.*, PgID.432.)

### 2.  Application Reports and Administrative Hearings

#### a.  Plaintiff's Reports

Plaintiff completed a function report on July 19, 2016 for her application. In the report, she provided information regarding her illnesses, injuries, or conditions; her daily activities; and her abilities.

Plaintiff reports that her ability to work is limited as follows: "The constant pain keeps her from doing most things. She has new pain her neck and is restricted from lifting most things, about everything is done sitting down and take her a long time to complete anything due to breaks." (*Id.*, PgID.270.)

Plaintiff maintains certain daily activities. Generally, a day for her includes "Get[ting] up, do[ing] some chores, stretching, feed[ing] children, [and] go[ing] for short walk". (*Id.*, PgID.271.) Plaintiff provides care for other people, with assistance of family. (*Id.*) She reports that her condition affects her sleep; she can only sleep for "2–3 hours at a time" (*Id.*) She also reports that she has no problems with personal care, but it "takes time to do these things." (*Id.*) Further, she does not need reminders for personal needs or taking

medicine (*Id.*, PgID.272.) Plaintiff cooks meals, either daily or every other day. (*Id.*) She reports that she cooks sitting down, and that things are "more difficult" since her conditions began. (*Id.*) Plaintiff reports that she does "yard work, vacuum, [and] laundry" and that completing this takes her "all day, with breaks". (*Id.*) Plaintiff indicates that she goes outside everyday; that she can do so alone; and that she either walks or drives a car. (*Id.*, PgID.273.) Plaintiff shops for groceries a "couple times a month". (*Id.*) Plaintiff reports she pays bills, counts change, handle a savings account, and use a checkbook. (*Id.*) Plaintiff colors as a hobby, and that it takes "about a week" to do a page. (*Id.*, PgID.274.) Plaintiff spends time with others, and she listed going to dinner and church events, as frequently as every couple of months. (*Id.*) She goes to the doctor's office and grocery store regularly. She does not need reminders to go places, and she indicated she needs someone to accompany her. (*Id.*) She further indicates that she does not have problems getting along with people. (*Id.*)  Finally, she said that she "did much more socially before illness". (*Id.*, PgID.275.)

Plaintiff claims her condition affects her abilities. Specifically, she indicates that lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, and using her hands have been affected. (*Id.*) Further, she indicates that she can walk ¼-mile, with resting for 10–20 minutes before she resumes. (*Id.*) She can pay attention for 45 minutes, as well as follow written or spoken directions. (*Id.*) Plaintiff can handle well changes in routine (*Id.*, PgID.276.) Plaintiff uses prescribed glasses and a walker. (*Id.*)

18

### b.        Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified about her educational background and work experiences. Plaintiff stated that she attended college, but she did not complete a degree. (*Id.*, PgID.63.) Her last job was a retail store manager, and she is not currently working. (*Id.*) With her last retail position, and a similar position before that, the position involved scheduling, stocking, and helping customers. (*Id.*) Similarly, she encountered weights in both positions of about 15–16 pounds. (*Id.*) She was on her feet all the time. (*Id.*) Together, she worked retail for about nine years. (*Id.*) In addition to her retail work, Plaintiff worked as a home care chore provider for a family member for about four years. (*Id.*, PgID.65.) Plaintiff also engaged in self-employment work. (*Id.*, PgID.65–66.) She worked as a hair dresser for four years.[7] Plaintiff said that she is "good around people" in the context of the retail position she had required contact with other people. (*Id.,* PgID.74.)

Plaintiff testified that her worst issue regarding her ability to work was standing, lifting, and sitting. (*Id.*, PgID.70.) Plaintiff indicated that her hands, left leg, and back hurt. (*Id.*) Plaintiff last experienced a car accident in 2003. (*Id.*) Plaintiff had back surgeries in either 2011 or 2012. (*Id.*, PgID.71.) Plaintiff also says that asthma is another medical issue that affects her ability to work (*Id.*, PgID.77.) She uses inhalers; she uses pulmicort[8] daily and a rescue inhaler based weather or environmental conditions. (*Id.*) Plaintiff also has

---

[7] Plaintiff indicated that there was an error with her taxes in her testimony (PageID.66), however, she did not specify what was the error.

[8] The transcript identified this as "pomocort." (*Id.*, PageID.77.)

fibromyalgia and carpal tunnel syndrome. (*Id.*, PgID.77, 79.) She wears a brace, for the carpal tunnel syndrome condition, but she has not had surgery. (*Id.*, PgID.79.)

Plaintiff wears a prescribed back brace since her second surgery, and she can only stand for about eight minutes. (*Id.*, PgID.71.) On average, on a 0–10 scale, she'd describe her pain at a 6, which is bearable, but ten rating is possible and difficult. (*Id.*, PgID.72.) She takes pain medication Lyrica and Gabapentin. (*Id.*) With this medication, she feels side effects that make her "[v]ery tired and sleepy. [Her] thought process is very off. [She] will forget stuff." (*Id.*) She uses her phone to set reminders to take medication (*Id.*, PgID.76.) Plaintiff uses a walker about five days of the month (*Id.*, PgID.74.)

Plaintiff testified that she can walk for about a half-mile before the pain in not bearable. (*Id.*, PgID.72) She cannot carry anything that weighs more than a gallon of milk. (*Id.*) She has had occasions, like cooking dinner, where she started a project and forgot to complete it. (*Id.*)

Plaintiff has three children, ages 15, 10, and three, at home. (*Id.*, PgID.74) In response to an inquiry about the three-year old, Plaintiff explained that she's "self-sufficient" "for the most part." (*Id.*) Plaintiff said that the three-year old will make his own bowl of cereal. (*Id.*) Plaintiff's daughter, or Plaintiff, prepare snacks for the three-year old. (*Id.*) Lunch is also prepared, but Plaintiff did not identify whom prepared it. (*Id.*)

Plaintiff testified that she utilizes a chore provider who helps her with chores four times per week. (*Id.*, PgID.75) The provider also helps Plaintiff with bathing and showering. (*Id.*)

20

Plaintiff continues to drive. (*Id.*) She testified that she takes her daughter to school and to extracurricular activities (*Id.*) The drive to school is about three miles. (*Id.*) When the chore provider is not available, Plaintiff also makes the 45-minute drive to her doctor. (*Id.*, PgID.75–6)

### c. The Vocational Expert's (VE) Testimony at the Administrative Hearing

The ALJ inquired of the VE at the administrative hearing about a hypothetical individual with plaintiff's characteristics. (*Id.*, PgID.81) The ALJ began with adding "restrictions with an ability for sedentary work. Except that this person can only occasionally climb ladders, ropes, and scaffolds, climb ramps and stairs, balance, stoop, kneel, crawl. Avoid concentrated exposure to excessive vibration, unprotected heights. Limited to simple, routine, repetitive tasks." (*Id.*) (quotation format condensed). With these limitations, the VE responded, "There would be some examples at the sedentary, unskilled level including some information clerks, 60,000 nationally . . .[,] [g]eneral office clerks, 58,000 nationally . . .[,] [and h]and packer, 62,000 nationally . . . ." (*Id.*) The following further restrictions would *not* impact the employment numbers: no exposure to hazards including work at unprotected heights, around dangerous moving machinery and no climbing of ladders, ropes, scaffolds (*Id.*, PgID.82.) Also, no constant handling or fingering would not impact the employment numbers. (*Id.*) The limitation of no reaching above shoulder level would reduce hand packer by 25%. (*Id.*) Hand packer involves frequent handling or fingering, according to the *Dictionary of Occupational Titles* (DOT) cited, but the VE agreed that *some* hand packers involved constant handling or fingering; thus a

conservative reduction of hand-packer jobs would be an additional 25%. (*Id.*) A limitation of no fast production work pace, nor no exposure to vibration, would not affect employment numbers. (*Id.*) With these jobs, generally tolerable absences would be no more that once a month. (*Id.*)

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527 (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927 (eff. Aug. 24, 2012 to Mar. 26, 2017). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such

as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id.* §§ 404.1527(c) (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927(c) (eff. Aug. 24, 2012 to Mar. 26, 2017). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540–42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule. Under that rule, certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640–41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be

disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6 (March 16, 2016).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071) (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

> (i)     [D]aily activities;
> (ii)    The location, duration, frequency, and intensity of . . . pain;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication . . taken to alleviate . . . pain or other symptoms;

25

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)     Any measure . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027,

1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016).

### G.     Arguments and Analysis

Plaintiff makes the following arguments for her position that substantial evidence

does not exist to support the ALJ's decision. I will address each in turn.

Plaintiff argues that the ALJ erred in affording weight to Dr. Daniel's opinion—

which predates the amended onset date—over the more-recent Plaintiff's medical records

and testimony about her needs with her activities of daily living. (ECF No. 13, PgID.529–

30.) I find this argument without support because district courts in this circuit have

recognized that medical evidence predating the alleged onset date can sometimes be

probative of disability during the relevant period, particularly "where evidence before or

after the relevant period shows findings indicative of an ongoing or chronic impairment

that does not improve or fluctuate." *Hill v. Comm'r of Soc. Sec.*, No. 17-10089, 2018 WL

1404416, at *8 (E.D. Mich. Feb. 27, 2018). *See, e.g.*, *Dimizio v. Berryhill*, No. 2:16-cv-6,

2017 WL 4078948, at *3–4 (E.D. Tenn. Sept. 13, 2017); *O'Malley v. Comm'r of Soc. Sec.*,

210 F. Supp. 3d 909, 915 (S.D. Ohio 2016); *Daniel v. Colvin*, No. 1:14-CV-775, 2015 WL

55302, at *3–4 (S.D. Ohio Sept. 21, 2015). *See also Carpenter v. Astrue*, 537 F.3d 1264,

1266 (10th Cir. 2008) (holding that the ALJ is required to consider all evidence—including

evidence predating an alleged onset date—based at least in part on 20 C.F.R. §

416.920(a)(3)'s mandate that the ALJ "consider all evidence in [the] case record"). Here,

26

the ALJ recognized evidence on the whole record. The ALJ recognized that Plaintiff is severely impaired because of status-post lumbar laminectomy and lumbar fusion and L5-S1 nerve root irritation. (*Id.*, PgID.49.) Plaintiff also has non-severe asthma, carpal tunnel syndrome, and fibromyalgia. (*Id.*) Plaintiff reports back pain (*Id.*, PgID.441), and surgical history of lumbar fusion, electromyography, and lumbar disc surgery (*Id.*, PgID.442.) The ALJ considered the extent of these factors and related factors in ascertaining the Plaintiff's residual functioning capacity.

Plaintiff further argues that the ALJ did not "articulate [a] basis for crediting or rejecting any doctor other than the state agency's doctor." (ECF No. 13, PgID.532.) Plaintiff is mistaken. Plaintiff asserts that "NeuroPain Consultants *found* that she needed help with her ADL's on March 5, 2018." (*Id.*, PgID.528) (emphasis added). On review of the record, the March 5, 2018 matter did not include a finding that Plaintiff needed maximal help with ADLs. (*See* ECF No. 11, PgID.455; *id.*, PgID.460) That section of the record is Plaintiff's self-reporting of her history of present illness. (*Id.*) The physical examination of plaintiff generally shows that her range of motion is within normal limits, but is limited by pain; her bilateral extremities' strength is never below a 4/5; and she maintained her sensation to light touch and pinprick throughout. Here, Plaintiff does not offer a medical opinion in support of greater limitation, as was her burden. *See Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-14644, 2013 WL 812081, at *6 (E.D. Mich. Feb. 12, 2013) ("Without a differing opinion, the ALJ was entitled to rely on the findings of the state agency consultant." (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005))), adopted, 2013 WL 811788 (E.D. Mich. Mar. 5, 2013); *Jordan v. Comm'r of Soc. Sec.*, 548

F.3d 417, 423 (6th Cir. 2008) (the claimant bears the burden of demonstrating the need for a more restrictive RFC).

Within the context of Plaintiff's RFC, I note that the ALJ stated that Plaintiff's RFC is supported by factors, which include "[Plaintiff] is apparently able to care for her young child (3-year old) at home, which can be quite demanding physically, without any particular assistance." (ECF No. 11, PgID.54.) While the physically-demanding assertion appears to be common sense, it appears to be not fully supported by the record, as all of Plaintiff's interactions with her children appear in *id.* at PgID.74. Nevertheless, such assertion is harmless error.[9] Apart from Plaintiff's daughter preparing snacks for the three-year old, there was no indication that Plaintiff received assistance with raising her children; there was nothing in her testimony or an indication that she needed assistance in her ADLs with her children. Even if one were to disregard the physically-demanding assertion, this does not change the ALJs analysis about Plaintiff's RFC to do sedentary work.

Further, Plaintiff notes that the ALJ observed that "the record reflects work activity after the alleged onset date." (*Id.*) However, this observation is in the context of the ALJ considering Plaintiff's capabilities of her residual functioning capacity, and to compare evidence of her medical records and testimony. The ALJ properly considered the lack of

---

[9] *See Dickey v. Colvin*, 74 F. Supp. 3d 1118, 1127 (N.D. Cal. 2014) (An error is harmless when it is "'inconsequential to the ultimate nondisability determination.'" Quoting *Molina v. Astrue,* 674 F.3d 1104, 1115 (internal quotations and citation omitted)).

work activity and corresponding lack of substantial gainful activity in step one.[10] (*Id.*, PgID.49.)

### H.    Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits and I recommend **DENYING** Plaintiff's Motion, (ECF No. 10), **GRANTING** the Commissioner's Motion, (ECF No. 15), and **AFFIRMING** the Commissioner's final decision denying benefits.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

---

[10] The ALJ found "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. *The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.*" (*Id.*, PageID.49.) (emphasis added).

390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 16, 2020

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 16, 2020

By s/Kristen Castaneda
Case Manager

30